## Farley v. Epling.

(Decided December 10, 1926.)

### Appeal from Pike Circuit Court.

1. Partnership—Doubts as to Validity of Items, in Accounting Between Partners, Must be Resolved Against One Handling Financial Affairs Without Books of Account.—Any doubts as to validity of items, in accounting between partners, must be resolved against partner who handled financial affairs of firm, but kept practically no books of account.

2. Partnership—Partner Cannot Recover for Services in Partnership Business, in Absence of Express Contract.—Partner cannot re-

cover for services in partnership business, in absence of express contract that he shall be paid therefor.

3. Trial—In Suit for Accounting, Refusal to Set Aside Submission for Plaintiff's Offer to Controvert Part of Defendant's Proof, Made while Court Indicated Intention to Overrule Exceptions to Commissioner's Report, Held Not Error.—In suit for accounting between partners in lumber business, refusal to set aside submission of cause on plaintiff's offer to introduce evidence contradicting defendant's proof that plaintiff had refused offer for practically all of company's lumber, not made until court was indicating that he would overrule exceptions to commissioner's report, held not error.

4. Partnership—Evidence Held to Show Partner in Lumber Business should be Charged for 650,000 feet of Lumber at $39.00 a Thousand in Accounting.—In suit for accounting between partners in lumber business, evidence held to show that partner handling firm's financial affairs should be charged for 650,000 feet of lumber at rate of $39.00 a thousand, though accurate estimate, was impossible.

5. Partnership—In Suit for Accounting, Partners in Lumber Business Held Not to Owe Each Other Anything, in View of Evidence.—In suit for accounting between partners in lumber business, partners held not to owe each other anything, in view of evidence and hopelessly confused state of records.

STRATTON & STEPHENSON for appellant.

DAUGHERTY & BARRETT for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

In the early part of 1920, the appellant and the appellee entered into a partnership, the terms of which, except as to one point, are not in dispute. Each was to contribute to the partnership funds the sum of $1,500.00. With the $3,000.00 thus realized they were to buy from the Yellow Poplar Lumber Company all the sunken logs owned by it in the Big Sandy river and its tributaries from Catlettsburg, Kentucky, to the headwaters of that river and its tributaries. The logs thus bought were to be sawed into crossties and lumber, and such lumber and crossties were to be sold. The appellant was to attend to the financial end of the business and the marketing of the lumber, and the appellee was to attend to the production end. The appellant was also to furnish a four horse team and a driver, for which he was to be paid the sum of $20.00 a day. Appellee claimed that it was agreed that neither appellant nor appellee was to receive any salary

for his services unless one did more work than the other, in which event the one performing such excess labor should be paid for it. Appellant denied this and appellee failed to establish it. Pursuant to the partnership agreement, the firm did buy the logs mentioned and also a sawmill which it set up at several different sites on the Big Sandy river. The firm itself, through its employees, sawed a large number of the logs, and it had a large number of the logs sawed by contract. The business ran from the summer of 1920, when lumber was high, until the early part of 1921, when a break came in the lumber market. In 1922 the appellant brought this suit to have the affairs of the partnership settled. He claimed that on such settlement a large amount would be found due him, for which he prayed judgment. By his answer and counterclaim the appellee joined in the request for a settlement, claiming that on such settlement a large amount would be found due him, for which he asked judgment. By their pleadings the parties set out their respective claims of credit to which they were entitled and debits for which they were liable, which items were, in most part, questioned by the adversary party. The case was referred to the master commissioner to settle the accounts. A large amount of proof was taken before him bearing on the items in the settlement. The commissioner made his report to the court. This report is, indeed, no report, since it does not set out what claims of the respective parties the commissioner allowed or disallowed. It simply states that the appellant's petition should be dismissed and the appellee allowed the sum of $2,500.00 on his counterclaim. But how the commissioner arrived at this conclusion is known probably only to him —certainly not to this court. Exceptions were filed by appellant to the commissioner's report. They were overruled and the report was confirmed. The court then entered a judgment dismissing appellant's petition and awarding the appellee the sum of $2,500.00 on his counterclaim. From this judgment the appellant brings this appeal.

Due to the inadequacy of the commissioner's report this court has been compelled in its consideration of this case to do the accounting which the commissioner should have done. This is labor which this court should not be called upon to perform, as it is not fair to other litigants who have cases in this court to be considered to take the

court's time in an accounting which should be done, in the first instance, in the trial court. It is a practice which is not to be commended. The appellant, who handled the financial affairs of the firm, kept practically no books of account or other satisfactory memoranda from which a reasonably accurate accounting can be made in this litigation. Any doubts, therefore, as to the validity of any item in that accounting must be resolved against him. Charles v. Charles, 199 Ky. 208, 250 S. W. 855. As credits, appellant filed, first, *en masse* a number of checks aggregating $11,434.39 drawn by the firm by him on the partnership funds in the bank. He testified that these were all paid out for partnership debts, and we find no evidence in the record which casts any substantial doubt on his testimony in this regard. We have allowed him this credit. He next filed another mass of partnership checks aggregating $3,034.54. These checks were never sent through the bank and probably, in most instances, were never seen by the payees, but were indorsed by the appellant himself and given by himself as partner to himself individually as a sort of I. O. U. of the partnership. This was done to remunerate him individually, as he says, for money he paid out of his own pocket and for supplies he furnished from a general store he was running to those who were working for the partnership in payment of claims they had against the partnership. However, in this mass of checks, aggregating $3,034.54, we have found one in the sum of $1,500.00 payable to the Yellow Poplar Lumber Company, being the appellant's contribution to the firm's capital. Of course, he is not entitled to take credit for this amount until we come to divide the firm capital or fix the responsibility for any deficit in that capital. Hence we have deducted this $1,500.00 from the $3,034.54. The balance, however, we have decided to allow him as a credit, since there is no satisfactory testimony that it does not represent payments made by him out of his own pocket for and on behalf of the firm as testified to by him. We have also allowed him as credits the sums of $504.70 and $1,800.81, being debts of the firm paid by him individually and as itemized by him in his testimony, and also the sums of $6,120.00 for the hire of the four-horse team for 306 days at $20.00 a day, being the number of days the evidence shows the team was used. So far as the Williams' checks aggregating $944.50 are concerned, it is true the evidence is not absolutely clear whether they

represent pay for a driver for the team which it was the appellant's duty to equip with a driver under the $20.00 a day agreement, or whether they represent salary for other work done for the firm; but on the whole the evidence tends strongly to show that Williams' work comprised in very small part, if at all, the driving of this team, and that it, in the main, had to do with other tasks of the firm. It is conceded that the appellant is to be charged with the sum of $1,155.00 for lumber he individually used. On the other hand, appellee should be allowed as a credit in this accounting the sum of $1,620.45, as itemized in the exhibit annexed to his answer and established by his proof—being the aggregate of certain debts and obligations of the firm which he discharged. He should be charged with the sum of $757.75 for lumber he used individually as the parties agree. As he failed to establish as a part of the partnership agreement any undertaking of the firm to pay him for any time he put in the firm's business in excess of that put in by appellant, appellee is not entitled to any pay for any such alleged excess labor, as it is firmly settled in this state that a partner cannot recover for his services in the partnership business in the absence of an express agreement that he shall be paid therefor. Caldwell v. Lang, 31 Ky. L. R. 237, 101 S. W. 972; Blair v. Fraley, 172 Ky. 570, 189 S. W. 886; Luke v. Burgess, 209 Ky. 800, 273 S. W. 452. Adding the net credits to which both appellant and appellee are entitled we have the aggregate sum of $22,153.80 as the proved expenses of this partnership business.

Considering now the items with which the parties should be charged, we find that the appellant admitted in his testimony that not less than 500,000 feet of lumber had been sawed and that at the institution of this suit very little of it remained unsold and in the yards. The appellee's proof establishes overwhelmingly that more than 700,000 feet of this lumber had been sawed and that there was not 50,000 feet left at the time the partnership broke up. The appellant had to do with the marketing of all of this lumber and received the pay for such as was sold. Although it is true that the appellee did sell some small lots of the lumber, the payment for these lots passed through appellant's hands. The latter claims that he realized slightly in excess of $14,000.00 for the lumber he sold, it being necessary to credit his statement showing

$15,327.76 in this connection with the sum of $1,000.00, part of the sale price of the sawmill. As stated, he kept practically no accounts whatever and what accounts he kept were in such a confused shape as to afford little guidance in determining the rights and obligations of the parties. As it was his duty to keep these accounts any doubt must be resolved against him. But beyond such doubts, the proof in this case affirmatively shows that he did not keep accurate accounts of the lumber he sold. He files in this case a statement found on page 268 of the record showing in itemized form the amounts he says he received for the lumber sold. Mr. J. H. Coleman, introduced by appellee, testified from the stubs of his check book as to certain payments made by him to the firm by means of checks payable to the firm which passed through appellant's hands, these payments being for lumber and crossties he had purchased from the firm. We have checked these Coleman payments against the items on appellant's statement of lumber sold above mentioned, and do not find where he made any return for those payments made by Mr. Coleman, amounting to (a) $336.60, (b) $316.50, (c) $333.25, (d) $6.08, (e) $472.95, respectively, or a total of $1,465.38. This was only one customer. The firm had many. This convinces us that the statement filed by appellant of the lumber which had been sold is far from accurate. As it is established that over 700,000 feet of lumber was sawed and that less than 50,-000 feet of lumber was left, it is apparent that to charge the appellant with 650,000 feet of lumber and to require him to account for its sale price, since the proceeds of the sales went through his hands, is to place the amount for which he should be charged at a conservative figure. Due to the confused state of the accounts it is impossible to be more accurate about this. The evidence shows that this lumber sold all the way from $1.10 a piece for some switch ties, there being 25 such ties to the 1,000 feet, to $115.00 a thousand for the best grade of the lumber, there being some culls which were sold as low as $10.00 a thousand. However, appellant is unable to state the total footage sold or the rate at which any particular footage was sold or to whom any particular item of the lumber set out in his statement was sold. Of course, appellee cannot since he did not handle this end of the business. Appellee introduced proof to show that the appellant had turned down an offer of $50.00 a thousand from a man by

the name of John A. Bentley for practically all of their lumber. Although this proof was in the record for over a year prior to the submission of this case, appellant did not undertake to contradict it until after the commissioner had made his report, exceptions to it had been filed and the court was indicating that he was going to overrule such exceptions. Appellant did then ask permission to introduce Bentley to show that he had made no such offer. It is apparent that this offer came too late and the court did not err in refusing to set aside the submission of the case for this purpose. Taking all the testimony in this record and considering what the partners had charged against themselves for the lumber they had individually used, we have concluded that to charge the appellant for the 650,000 feet of lumber at the rate of $39.00 a thousand is to treat the parties as fairly as can be done, in view of the hopelessly confused state of the accounts of the firm and the impossibility of reaching any more accurate result. On such a basis the firm accounts should be charged with $25,350.00 for the lumber sold. Deducting the expenses of the firm's business as we first determined them herein we have a balance of practically $3,197.00, which, equally divided between the two partners, amounts to about $1,598.00 apiece. Against the $1,598.00 of the appellee, however, we must charge one-half of a personal note of his in the sum of $900.00, which he admits was paid by the partnership, this note having been given by him to raise, in part, his share of the capital agreed to be contributed to the firm. Against it we must also charge a store account of $1,052.20, which he admits he owes the appellant individually, and also a state tax bill of his in the sum of $33.60, admittedly paid by appellant.

Summing up, we conclude that in view of the hopelessly confused state of the records of the parties from which any accounting of this firm business can be had, the evidence and what data we have to go on demonstrate that neither party owes the other anything, for which reason both the appellant's petition and the appellee's counterclaim should have been dismissed. In so far as the judgment did dismiss the appellant's claim, it is affirmed, but in so far as it awarded the appellee a judgment of $2,500.00 on his counterclaim, it is reversed, with instructions to enter a judgment dismissing the same. The parties will divide their costs in this court.